**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

WATU L.

|                   |                    |
|-------------------|--------------------|
| **Plaintiff,**    | **22-CV-424-HKS**  |

v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings,

including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #26.

## BACKGROUND[1]

On October 4, 2019, plaintiff, at the age of 49, protectively filed an

application for Supplemental Security Income ("SSI") benefits, alleging a disability onset

date of April 24, 2019 . Dkt. #6, pp. 405-411.[2]

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

[2] Although plaintiff alleged an onset date of April 24, 2019, the earliest month for which SSI benefits are payable is the month following the month in which the claimant filed his or her application. 20 C.F.R. § 416.335. Thus, the relevant period begins on October 4, 2019, the date of plaintiff's application. *Jedermann v. Comm'r of Soc. Sec.*, 1:19-CV-0761 (CJS), 2020 WL 5361665, at *2 (W.D.N.Y. Sept. 8, 2020).

In a Disability Report filed on October 31, 2019, plaintiff alleged he was disabled due to two broken vertebrae in his neck; five fractured discs in his back; five fractured ribs; dizzy spells; and a head injury.  Dkt. #6, p. 435.

Plaintiff's claim was denied initially on February 3, 2020, Dkt. #6, pp. 326-331, and on reconsideration on May 11, 2020. Dkt. #6, pp. 338-349.

Plaintiff requested a hearing, and a telephonic hearing was held on December 8, 2020 before Administrative Law Judge ("ALJ") Mark Solomon. Dkt. #6, pp. 278-298. Plaintiff appeared with counsel. *Id.*

The ALJ first confirmed with plaintiff's counsel that he was still waiting for records from Erie County Medical Center ("ECMC"), ECMC Physical Therapy, and Dr. Castiglia. Dkt. #6, p. 281. The ALJ stated that he would leave the record open for two weeks so that those documents could be submitted. *Id.*

Upon examination by the ALJ, plaintiff testified that he was born on April 30, 1970 and that he completed the twelfth grade. Dkt. #6, p. 283. He testified that he had not worked since April 24, 2019, when he fell off a roof while working and broke his back. *Id.*

Plaintiff also testified that he fell in August 2020 at a family gathering while intoxicated, and that he was subsequently diagnosed with orthostatic hypotension, that

is, low blood pressure. Dkt. #6, pp. 284-285.  He testified that he continues to have dizzy spells for which he is undergoing testing. Dkt. #6, p. 285. After that fall, doctors prescribed him a walker and cane which he still uses when outside his home. Dkt. #6, pp. 285-286.

Plaintiff further testified that, after his fall from the roof in 2019, he underwent physical therapy for his back and neck which he is still attending. *Id.*

Next, plaintiff testified that he lives alone and, prior to the 2020 fall, he was able to take care of his own personal needs, except he used a shower chair because his balance was off. Dkt. #6, p. 286. He was also able to wash dishes, make his own meals, and, for the most part, do his own laundry, although sometimes a girlfriend helped him. Dkt. #6, pp. 286-287.

Plaintiff also testified that he has not resumed driving since his 2019 fall as he does not have full range of motion in his neck. Dkt. #6, p. 287. He uses Medicaid transportation to get to appointments. *Id.* He is able to do light shopping but needs a friend to help with heavier items. Dkt. #6, pp. 287-288. There is a store within walking distance of his home. Dkt. #6, p. 288.

The ALJ asked plaintiff how long he can stay seated, and plaintiff stated a couple of hours unless he needs to use the restroom. *Id.* Sometimes, he gets up and stretches or does exercises as instructed by his physical therapist to help him regain his equilibrium. *Id.*

The ALJ next asked plaintiff how long, prior to the August 2020 fall, he could stand up without using a cane or walker. Dkt. #6, p. 288. Plaintiff testified that he could stand for probably one hour. *Id.* Plaintiff then testified that he had no difficulties using his hands or fingers for zipping or buttoning, opening jars, door handles, or similar things. *Id.* He also testified that he has no problem reaching either overhead or directly in front of himself with either arm. Dkt. #6, pp. 288-289.

Next, the ALJ asked plaintiff what the heaviest weight he could currently lift was, and plaintiff testified he could lift 50 pounds for a couple of minutes at a time. Dkt. #6, p. 289. As an example, he testified that about a week or two prior to the hearing, his landlord had someone drop off a bucket of drywall mix, and she asked him to put it in her hallway. *Id.* Plaintiff testified that he carried it inside from the driveway, taking a break to regain his balance after every few steps. *Id.*

The ALJ next asked plaintiff whether he is currently taking prescription medicines. Dkt. #6, p. 290. Plaintiff testified that he was prescribed pain medications after the fall from the roof, and they helped control the pain, as did physical therapy. *Id.*

Plaintiff testified that, prior to a recent toe injury, his daily activities were reading, eating three meals a day, and watching television. Dkt. #6, pp. 290-291. Plaintiff testified that he is sometimes depressed because of his current physical condition and he sees a therapist. Dkt. #6, pp. 291-292.

Upon examination by his counsel, plaintiff testified that his dizzy spells come on randomly a couple of times a day. Dkt. #6, p. 292. He is still undergoing testing for the dizziness, but he has no further treatment scheduled for his neck injury other than physical therapy. Dkt. #6, pp. 292-293.

The ALJ next heard from Sheri Pruitt, a Vocational Expert ("VE"). The ALJ noted that plaintiff has no past relevant work; he was under the age of 50 at his alleged onset date; he turned 50 during the current year; and he has a high school diploma. Dkt. #6, p. 294.

The ALJ then asked the VE to assume a claimant with plaintiff's age, education, and work experience who can perform the full range of light work with the ability to sit, stand, or walk for 6 hours; lift or carry up to 20 pounds occasionally and 10 pounds frequently; who should avoid climbing ladders, scaffolds, or ropes; who can frequently balance; and who should avoid working at unprotected heights or with hazardous machinery. Dkt. #6, p. 294.

The ALJ asked whether, with such assumptions, the individual could perform any unskilled light jobs. *Id.* The VE testified that such a person could perform the jobs of inspector, hand packager, small parts assembler, and shipping and receiving weigher. Dkt. #6, pp. 294-295.

Next, the ALJ asked the VE if, prior to his 50th birthday, the individual was limited to the full range of sedentary work with the same restrictions, whether there were unskilled sedentary jobs he could perform. Dkt. #6, p. 295. The VE stated that the person could perform the unskilled jobs of final assembler, order clerk, and weight tester. Dkt. #6, pp. 295-296.

The VE also testified that the person could be off task up to and including 10% of the workday, outside of regularly scheduled breaks, and absent once a month before work would be precluded. Dkt. #6, p. 296.

Finally, plaintiff's counsel asked the VE whether, if the individual is limited to standing no more than three out of six hours a day but still able to lift 20 pounds occasionally and 10 pounds frequently, he would still be able to perform light work. Dkt. #6, pp. 296-297. The VE testified that those restrictions would align with sedentary rather than light work. Dkt. #6, pp. 296-297.

On April 9, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #6, pp. 258-277. The Appeals Council denied plaintiff's request for review on March 29, 2022. Dkt. #6, pp. 5-8. In so doing, the Appeals Council declined to consider additional medical records that plaintiff submitted. Specifically, the Appeals Council declined to consider records from ECMC because they were duplicative of exhibits already contained in the record. Dkt. #6, p. 6. The Appeals Council also declined to consider other medical records from 2020 and 2021 on the grounds that the evidence

"does not show a reasonable probability that it would change the outcome of the decision." *Id.* This action followed.

## DISCUSSION AND ANALYSIS

### <u>Legal Standards</u>

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must

demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since October 4, 2019, the application date; (2) plaintiff has the severe impairments of degenerative disc disease of the cervical spine status post healed fracture; history of right rib fracture; and history of thoracic spine compression fracture; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[3] except he could lift and carry twenty pounds occasionally and ten pounds

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

frequently and sit, stand, and walk for a total of six hours; he could frequently balance, but can never climb ropes, ladders, or scaffolds; and he must avoid working around hazards such as unprotected heights or dangerous machinery; (5) plaintiff has no past relevant work; (6) considering plaintiff's age, education, work experience, and RFC, he is able to perform the occupations of inspector/hand packager, small products assembler, and shipping receiving weigher; and (7) plaintiff has not, therefore, been under a disability within the meaning of the SSA since October 4, 2019. Dkt. #6, pp. 263-273.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1))*.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2))*.* Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

## **Challenge to the ALJ's Decision**

Plaintiff makes a single challenge to the ALJ's decision: he argues that the ALJ improperly substituted his own lay judgment for that of the medical opinion of any doctor. Dkt. #14-1, pp. 15-27.

### Legal Standards

"In deciding a disability claim, an ALJ is tasked with 'weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Barry J. v. Comm'r of Soc. Sec.*, 725 F. Supp.3d 312, 323 (W.D.N.Y. 2024) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). "While an ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in [his] decision, . . . an ALJ is not a medical professional, and therefore [he] is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id.* (citation and internal quotation marks omitted).

"However, at bottom, '[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear.'" *Karen F. v. Comm'r of Soc. Sec.*, 1:22-CV-00250-EAW, 2023 WL 3191611, at *3 (W.D.N.Y. May 2, 2023) (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir 2021)). *See also Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) ("Notably, if the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.") (citation and internal quotation marks omitted).

### The ALJ's Assessment of the Medical Opinion Evidence

Before turning to the medical opinion evidence, the ALJ reviewed the function report that plaintiff submitted in support of his application, in which he stated,

*inter alia*, that he had knee and back pain, dizziness, and that a doctor had told him not to lift more than twenty pounds. Dkt. #6, pp. 266-267, 446-452.

The ALJ then conducted an extensive review of plaintiff's treatment records from the time of his fall from the roof on April 24, 2019 through late 2020. Dkt. #6, pp. 267-270. Summarizing those records, the ALJ noted that plaintiff's treatment had been essentially routine and conservative, and that he underwent no surgical procedures or injections. Dkt. #6, p. 270. However, although plaintiff showed improvement with physical therapy, he continued to report significant neck stiffness and pain for which his doctor recommended over-the-counter medications. *Id.*

The ALJ then considered the medical opinions and prior administrative findings. First, the ALJ considered the report of Dr. Nikita Dave, who conducted an internal medical examination of plaintiff on January 28, 2020. Dkt. #6, pp. 584-587. Dr. Dave noted that plaintiff reported that his neck had become very stiff after wearing a cervical collar for about six months, for which he was currently undergoing physical therapy. Dkt. #6, p. 584. Plaintiff also reported that he has low back pain that "comes and goes" with heavy lifting. *Id.*

On examination, Dr. Dave observed that plaintiff's gait was "slightly unsteady," but that he used no assistive devices and needed no help changing or getting on or off the exam table. Dkt. #6, p. 585. Under "musculoskeletal," Dr. Dave noted that plaintiff had somewhat limited cervical, lumbar, and shoulder flexion, but a full range of

motion in his hips, knees, and ankles bilaterally. Dkt. #6, p. 586. She also noted that plaintiff had "slightly poor balance with some dysmetria noted on the exam." Dkt. #6, p. 587.[4]

In her medical source statement, Dr. Dave then stated: "In my opinion, due to dysmetria and slightly poor balance, which may be multifactorial, avoid ladders and heights. No other limitations." *Id.*

The ALJ found Dr. Dave's opinion "partially persuasive," but only as to her recommendation that plaintiff avoid ladders and heights. Dkt. #6, pp. 270-271. The ALJ explained that although Dr. Dave's examination showed "some positive findings of a reduced range of motion," she did not "include any exertional or postural limitations that is evident due to his cervical and lumbar spine issues" and that her opinion "does not go far enough to cover every facet of the claimant's physical capabilities." *Id.*

Although the ALJ's discussion of Dr. Dave's opinion was brief, it is clear to the Court that he found her opinion that plaintiff had no non-environmental limitations unpersuasive because it conflicted with plaintiff's treatment records, which he specifically referenced. Dkt. #6, p. 270. In so doing, the ALJ thus did not rely on his own lay judgment and, in fact, he assessed greater restrictions than those to which Dr. Dave opined. *See Ramsey*, 830 F. App'x at 39 ("Indeed, the ALJ occasionally deviated from consultative examiners' recommendations to *decrease* Ramsey's RFC based on other evidence in the

---

[4] "Dysmetria" is the "impaired ability to estimate distance in muscular action." *Merriam-Webster Dictionary*, http://www.merriam-webster.com/medical/dysmetria (Jan. 6, 2026).

record. . . . The ALJ committed no error by determining the scope of Ramsey's RFC because that is his responsibility.") (citations omitted). *See also Otis L. v. Comm'r of Soc. Sec.*, 1:24-cv-04347-GRJ, 2025 WL 219355, at *4 (S.D.N.Y. Jan. 15, 2025) ("The Court finds no error in the ALJ's conclusion that Plaintiff was somewhat more limited than the medical opinion evidence suggested, but not so limited as to be considered disabled within the meaning of the Social Security Act.") (citations omitted); *Roane v. O'Malley*, 22 Civ. 10704 (AEK),  2024 WL 1357845, at *9 (S.D.N.Y. Mar. 29, 2024) ("Moreover, Plaintiff also suffered no harm due to ALJ Romeo's deviations from Dr. Abueg and Dr. Miller's opinions—indeed, those departures led the ALJ to assess more restrictive limitations than what Dr. Abueg and Dr. Miller deemed appropriate.").

Similarly, the ALJ found the opinions of state agency consultants Drs. Lawrence and Miller unpersuasive because they conflicted with plaintiff's medical records. Dkt. #6, p. 271. For example, Dr. Lawrence opined that plaintiff had no exertional limitations, which the ALJ noted was inconsistent with the treatment notes of Dr. Castiglia, who treated plaintiff after his fall in 2019. *Id.* The ALJ explained that Dr. Castiglia's records "repeatedly show[ed] limitations in the claimant's cervical range of motion accompanied with stiffness." *Id.*

As to Dr. Miller, the ALJ found that his opinion that plaintiff could lift or carry no more than 10 pounds was contrary to Dr. Castiglia's treatment notes, as well as

diagnostic x-rays and CT scans, which showed that plaintiff had only mildly diminished upper extremity strength. *Id.*[5]

Further, this Court has rejected the argument, made by plaintiff, that an ALJ impermissibly relies on his own lay judgment in rejecting all medical opinions and formulating an RFC based on other evidence of record.

For example, on similar facts, in *Matthew S. v. Comm'r of Soc. Sec.*, 21-CV-00220-LJV, 2023 WL 3603671 (W.D.N.Y. May 23, 2023), the ALJ found the opinion of Dr. Dave and a state agency doctor unpersuasive to the extent that they assessed no exertional or postural limitations. *Id.* at *2. The ALJ instead found—based on, *inter alia*, plaintiff's subjective complaints and treatment records—that plaintiff had greater physical limitations and reached a corresponding RFC. *Id.* at *3. The Court held that the ALJ's determination was based on substantial evidence and that there was no evidentiary gap, observing:

> So the ALJ accepted the limitations in the opinions of Dr. Dave and Dr. Ehlert, but he nevertheless found those opinions unpersuasive because Matthew had *more* physical limitations than those about which the two physicians opined. . . . The ALJ certainly did not err by concluding that Matthew was *more* restricted in his ability to perform work-related activities than Dr. Dave or Dr. Ehlert found him to be.

---

[5] The Court notes that plaintiff's characterization of Dr. Miller's recommended RFC as one for sedentary work is inaccurate. Dkt. #14-1, p. 12. Although Dr, Miller opined that plaintiff could lift only up to 10 pounds, he also opined that plaintiff could stand and/or walk for 6 hours in an 8-hour workday and that plaintiff's "maximum sustained work capability" was "light." Dkt. #6, pp. 321, 324.

*Id.* (citations omitted). *See also Karen F.*, 2023 WL 3191611, at *4 (ALJ's determination was supported by substantial evidence; although she rejected medical opinions in favor of a more restrictive RFC, the RFC was based on plaintiff's medical records and testimony); *Tammy B. v. Comm'r of Soc. Sec.*, 1:21-CV-11 (JLS), 2022 WL 3714592, at *4 (W.D.N.Y. Aug. 29, 2022) (rejecting plaintiff's argument that because the ALJ was not persuaded by any of the medical opinions, he relied on his own lay interpretation of raw medical data; in formulating RFC, ALJ relied on plaintiff's testimony and objective medical evidence regarding her limitations).[6]

In sum, it "is the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant." *Palistrant v. Comm'r of Soc. Sec.*, Case # 16-CV-588-FPG, 2018 WL 4681622, at *5 (W.D.N.Y. Sept. 28, 2018) (citation and internal quotation marks omitted). As the above discussion demonstrates, this is what the ALJ did here.[7]

---

[6] Plaintiff's reliance on *Mariani v. Colvin*, 567 F. App'x 8 (2d Cir. 2014), is unavailing. Dkt. #14-1, pp. 19-21. There, the Court determined that the ALJ's finding that plaintiff had 50% RFC in his right upper extremity was not supported by substantial evidence because the record only included evidence that plaintiff either had no use of his hand at all, or that his hand and finger dexterity was completely intact. *Id.* at *10. Here, however, the ALJ pointed to specific evidence in the form of treatment records, diagnostic tests, and plaintiff's own statements that support the limitations included in the RFC. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (distinguishing *Mariana* and rejecting argument that RFC finding that plaintiff could perform work at pace 10% slower than average was not supported by substantial evidence; finding was based on plaintiff's medical and testing history); *Tammy B.*, 2022 WL 3714592, at *4 (distinguishing *Mariana*; ALJ based specific limitations in RFC on plaintiff's testimony and medical records).

[7] Plaintiff also argues that remand is required because plaintiff developed additional medical impairments after Dr. Miller reviewed the file. Dkt. #14-1, pp. 22-23. This argument is without merit. The evidence to which plaintiff alludes pertains to his fall in August 2020 at a family gathering while highly intoxicated. Plaintiff testified about this fall in his hearing testimony, and the ALJ specifically considered those medical records—as well as the reports of a consultative psychiatrist and a state agency psychiatric consultant—at Step Two of his analysis. Dkt. #6, pp. 263-266. The ALJ concluded that plaintiff's mental impairment of alcohol-use disorder was

### *Evidence Submitted to the Appeals Council*

Although plaintiff does not allege, as a separate basis for his appeal, error in the Appeals Council's decision not to accept additional evidence that plaintiff submitted with his request for review, he cites to some of that evidence in his opening brief. Dkt. #14-1, p. 22.

"[I]t is black-letter law that 'issues not sufficiently argued in [briefings] are considered waived.'" *Ashley P.H. v. Comm'r of Soc. Sec.*, 22-cv-442-MJP, 2025 WL 606547, at *5 (W.D.N.Y. Feb. 25, 2025) (quoting *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)).

There is a well-established analytical framework that applies to the question of whether the Appeals Council must accept new evidence in a request for review of an ALJ's decision. *See generally Chakarla M. o/b/o/ Comm'r of Soc. Sec.*, 6:22-CV-6081Sr, 2025 WL 2782983, at *4 (W.D.N.Y. Sept. 30, 2025). Plaintiff has not cited this authority or set forth any argument or analysis on this issue. The Court thus concludes that plaintiff has forfeited this issue. *Ashley P.H.*, 2025 WL 606547, at *5.

---

non-severe, and plaintiff does not challenge that determination. In short, this argument is a red herring.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #14) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #18) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:     Buffalo, New York

               January 6, 2026

                                           s/ H. Kenneth Schroeder, Jr.
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**